IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| GEORGE EDWARD PRICE, | : | |
| Plaintiff, | : | |
| v. | : | NO. 3:12-cv-49 (CAR) (CHW) |
| Captain KENNETH STEWART, *et al.*, | : | Proceedings Under 42 U.S.C. § 1983 |
| Defendant. | : | Before the U.S. Magistrate Judge |

**REPORT AND RECOMMENDATION**

Now before the Court is a Motion for Summary Judgment filed by Defendants Stewart, Roland and Hoffman.[1] (Doc. 27). Because the record before the Court shows that there are no genuine issues of material fact and that the Defendants are entitled to judgment as a matter of law, it is **RECOMMENDED** that the Defendants' Motion for Summary Judgment be **GRANTED**.

**PROCEDURAL HISTORY**

Plaintiff, a prisoner, filed his *pro se* complaint pursuant to 42 U.S.C. § 1983. He alleges that Defendants Stewart, Hoffman and Roland, all Morgan County Sheriff's Officers, violated his constitutional rights by (1) falsely arresting Plaintiff; (2) using excessive force in arresting Plaintiff; and by (3) unlawfully detaining Plaintiff and denying Plaintiff needed medical care. (Doc. 1, pp. 12-17). Plaintiff seeks compensatory damages and a declaration that the Defendants violated Plaintiff's constitutional rights. (Doc. 1, pp. 18-19). Following a frivolity review of Plaintiff's complaint under 28 U.S.C. § 1915A, Sheriff Robert Markley, a former defendant, was dismissed. (Doc. 12). Plaintiff's *Miranda* claims were also dismissed. (*Id.*).

---

[1] Plaintiff, in his Complaint, named "Deputy Craig Huff" as a Defendant. Defendant Hoffman answered without raising any objection under F.R.C.P. 10(a).

1

On June 27, 2013, the remaining Defendants filed the instant Motion for Summary Judgment. (Doc. 27). Plaintiff filed a Response on July 24, 2013 (Doc. 32), and the Defendants filed a Reply on August 5, 2013. (Doc. 37). Although Plaintiff's Statement of Material Facts plainly responds to the Defendants' Statement of Material Facts, Plaintiff's Response brief is labeled "Plaintiff's Brief in Support of his Motion for Summary Judgment." (Doc. 32). To the extent that Plaintiff is moving for summary judgment, it is further recommended that his motion be **DENIED**.

## BACKGROUND

Plaintiff George Edward Price was tried and convicted of the murder of his wife in 2011. (Doc. 1, p. 1). The instant § 1983 action concerns Plaintiff's arrest by officers of the Morgan County Sheriff's Office on June 15, 2010. (Doc. 1, p. 5).

Viewed in the light most favorable to Plaintiff, the facts are as follows. The Defendants were assisting the City of Madison Police Department in the investigation of the death of Plaintiff's wife. (Doc. 28, p. 2). At approximately 4:30 in the afternoon, Defendant Hoffman went to the residence where Plaintiff's estranged wife had been found dead of a gunshot wound to the head. (Doc. 27-2, p. 2). Sgt. Campbell of the Madison Police Department requested the help of the Morgan County Sheriff's Office in apprehending the suspect, Plaintiff. (*Id*.). Hoffman was told that witnesses had observed Plaintiff leaving the victim's residence in a red van. (*Id*.). Defendants and other Morgan County officers went to Plaintiff's residence on Lower Apalachee Road in Morgan County, but Plaintiff was not at home when the officers arrived. (*Id*.).

Plaintiff was driving his motorcycle back to his home when he encountered the Defendants and other Morgan County officers. (Doc. 28, p. 2). Plaintiff states that he was wearing "a D.O.T. approved helmet" at the time. (Doc. 32, p. 2). A Deputy in the street near

Plaintiff's house signaled for Plaintiff to slow down, and Plaintiff obeyed. (Doc. 28, p. 2; Doc. 32, p. 2). Plaintiff indicated that he would turn into his driveway, and then proceeded to do so. (Doc. 28, p. 3). At this point, a number of Morgan County officers, including Defendant Stewart, pointed guns at Plaintiff. (*Id.*). Defendant Stewart told Plaintiff to "turn it off." (Doc. 32, p. 3). Although Plaintiff could not hear Defendant Stewart over the sound of the motorcycle, Plaintiff saw Defendant Stewart's lips move. (*Id.*). Even though Plaintiff understood Defendant Stewart's command, Plaintiff did not immediately turn off his motorcycle because he "was nervously trying to think how to turn off the bike without moving his hands." (*Id.*).

As soon as Plaintiff turned off his motorcycle, Defendant Roland grabbed Plaintiff's wrist, jerked it, and pulled Plaintiff forcefully off the motorcycle and onto the ground. (Doc. 28, p. 4). Plaintiff "struck the ground with his head, his right shoulder and his elbows." (*Id.*). After this "takedown," several officers, including Defendant Hoffman, "put their knees on Plaintiff, and each grabbed an arm or leg." (*Id.* p. 5). Plaintiff claims that his stomach and back were bruised while he was on the ground. (*Id.*). Eventually, Plaintiff was handcuffed, placed in a patrol vehicle for 10-15 minutes, and then driven to the Morgan County Sheriff's Office. (*Id.*).

At the Sheriff's Office, Plaintiff claims he was subjected to six-and-a-half hours of custodial interrogation by GBI agents, although Plaintiff admits he was told: "you are not under arrest, you may go any time you want to, we just want to talk to you as a person of interest." (Doc. 32, pp. 12, 18-19). Plaintiff also argues that EMTs arrived at the Sheriff's Office about an hour later, but that Plaintiff was not examined or treated by them on the orders of a GBI agent. (Doc. 28, p. 6). Although Plaintiff's "visible wounds healed within 6 weeks to 3 months" (Doc. 28, p. 6), Plaintiff claims that the muscles and tendons in his arm were damaged, and that he suffered headaches for several months after the takedown due to an alleged concussion. (Doc.

3

31, p. 11; Doc. 32-1, pp. 21-22; Doc. 32-2, p. 8). Plaintiff also claims that his neck still bothers him, but medical diagnoses have revealed only "mild arthritis" and a "pinched nerve." (Doc. 31-2, pp.4, 11).

## **LEGAL STANDARDS**

According to Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the burden shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the moving party is not entitled to judgment as a matter of law. *Id*. at 324-326. If the evidence presented by the non-movant is "not significantly probative" or is "merely colorable," then summary judgment must be granted. *Anderson*, 477 U.S. at 249. In fact, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## ANALYSIS

Plaintiff's complaint appears to allege that the Defendants (1) falsely arrested Plaintiff without a warrant or probable cause; (2) used excessive force in arresting Plaintiff; and (3) unlawfully detained Plaintiff and denied Plaintiff needed medical care. As discussed below, the evidence, viewed in the light most favorable to Plaintiff, shows that the Defendants did not violate Plaintiff's constitutional rights, and that the Defendants are therefore entitled to qualified immunity from suit. Accordingly, it is recommended that the Defendants' Motion for Summary Judgment be granted.

### A. FALSE ARREST

Plaintiff first argues that he was subjected to an "illegal arrest" because the Defendants had neither a warrant nor probable cause. (Doc. 32, p. 7, 13, 17). In other words, Plaintiff argues that he was falsely arrested.

The Defendants argue, unpersuasively, that Plaintiff's subsequent conviction bars his claim for false arrest because "[t]hat conviction conclusively establishes probable cause." (Doc. 27-3, pp. 5-6) (citing *Heck v. Humphrey*, 512 U.S. 477 (1994)). In *Heck*, the Supreme Court held that "in order to recover damages for . . . harm caused *by actions whose unlawfulness would render a conviction or sentence invalid*, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486-87 (emphasis added). The unlawfulness of an initial arrest would not necessarily render a conviction or sentence invalid, as additional evidence might be lawfully obtained even after an arrest without probable cause. Following this reasoning, the Eleventh Circuit has held that "an illegal search or arrest may be followed by a

5

valid conviction." *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003). Accordingly, *Heck* does not generally bar false arrest claims. *Id.* at 1161.

The Defendants also argue, persuasively, that they are entitled to qualified immunity. "Qualified immunity will shield [arresting officers] from a claim of false arrest without probable cause if there was arguable probable cause, i.e., if a reasonable police officer, knowing what [the arresting officers] knew, could have believed there was probable cause for the warrantless arrest." *Jones v. Cannon*, 174 F.3d 1271, 1283 (11th Cir. 1999). In this case, the Defendants had—at a minimum—"arguable probable cause" because they suspected Plaintiff of murdering his wife on the day of the arrest based on information supplied by the Madison County Sheriff's Office which indicated that Plaintiff had been observed leaving the murder scene in a red van, and also that Plaintiff was known to be "estranged" from his wife. (Doc. 27-3, p. 7). As a result, the Defendants are entitled to summary judgment on Plaintiff's claim of false arrest.

## B. EXCESSIVE FORCE

In a second claim, Plaintiff argues that the Defendants violated his Fourth Amendment right to be free from excessive force during the course of an arrest. *See. e.g., Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002). Plaintiff claims that Defendant Roland used excessive force during the "takedown" (Doc. 32, pp. 10-11), that Defendant Hoffman used excessive force by putting his knees on Plaintiff and grabbing an arm or leg (Doc. 28, p. 5), and that Defendant Stewart is responsible as a supervisor (Doc. 32, pp. 16-19). Because Defendants Roland and Hoffman did not violate Plaintiff's constitutional rights, Defendants Roland and Hoffman are entitled to qualified immunity. Furthermore, because Plaintiff fails to demonstrate an underlying constitutional violation, he cannot maintain an excessive force claim against Defendant Stewart in a supervisory capacity. Accordingly, the Defendants are entitled to summary judgment

**(1) <u>Defendant Roland</u>**

In determining whether a defendant is entitled to qualified immunity from a claim of excessive force, courts should generally ask "whether the plaintiff's allegations, if true, establish a constitutional violation." *Vineyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (receded from by *Pearson v. Callahan*, 555 U.S. 223 (2009)).

Whether an officer's use of force violated the Fourth Amendment, and was therefore "excessive," is judged by an "objective reasonableness" standard. *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008). Factors to consider include "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted, and (4) whether the force was applied in good faith or maliciously and sadistically." *Id*. Courts also consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The use of force "must be judged . . . from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002).

The evidence in the record shows that the force used by Defendant Roland did not violate the Fourth Amendment. Defendant Roland suspected Plaintiff of murdering his wife with a firearm and reasonably believed that Plaintiff had delayed in obeying an order to turn off his

motorcycle. (Doc. 28, p. 2-4). At the time of the "takedown," Plaintiff was standing, unrestrained, above the vehicle. (*Id.*). The full extent of the force used by Defendant Roland was as follows: Defendant Roland "grabbed Plaintiff's right wrist and jerked it," thereby bringing Plaintiff "forcefully off the bike." (*Id.*). This takedown lasted "approximately two seconds." (*Id.*). Plaintiff admits that he has received no medical diagnosis concerning his shoulder or head, and that he was diagnosed with only "mild arthritis" and a "pinched nerve" in his neck. (*Id.*, p. 66, 73). A booking photograph in the record also indicates that Plaintiff suffered an abrasion to his shoulder that resulted in minor bleeding. Given the severity of the crime under investigation and the undisputed evidence that Plaintiff kept his motorcycle running and did not dismount when ordered to do so, the level of force used by Defendant Roland, of short duration and resulting in minor injuries, was not unreasonable, and Defendant Roland is therefore entitled to qualified immunity.

Additionally, the record indicates that the level of force used by Defendant Roland was merely *de minimis*. The force described in this case is comparable to the force described in *Nolin v. Isbell*, 207 F.3d 1253, 1255-58 (11th Cir. 2000), in which the court held that a district court had "erroneously rejected the de minimis force principle". In *Nolin*, an arresting officer allegedly "grabbed [the arrestee] from behind by the shoulder and wrist, threw him against a van three or four feet away, kneed him in the back and pushed his head into the side of the van . . . ." *Id.* at 1255. The *Nolin* Court not only held that the arresting officer was entitled to qualified immunity, but it also held that the alleged harm was *de minimis*, and therefore insufficient to support a claim of excessive force. *Id.* at 1255-58 ("the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment"). While the Court need not reach the *de-minimis*-force issue here, it is likely that, even if deprived of qualified

immunity, Defendant Roland would be entitled to Summary Judgment on Plaintiff's excessive force claim.

**(2) <u>Defendant Hoffman</u>**

Plaintiff claims that he "felt Deputies Roland and Hoffman were [both] involved" in the "takedown," but, to the extent that this unsubstantiated allegation is true, Defendant Hoffman is also entitled to qualified immunity. (Doc. 31-1, pp. 11, 14-15; Doc. 32, p. 4). There is no affirmative evidence to indicate that they were involved, and in light of the short duration of the use of force by Defendant Roland, there is no evidence that either Defendant had an opportunity to intervene to stop the use of force.

Plaintiff additionally claims that several officers, including Defendants Hoffman and Roland, put their knees on Plaintiff, "remov[d] his cellphone, belt[,] keys and frontpocket contents plus his boots," and then "cuffed him." (Doc. 28, p. 5; Doc. 31-1, pp. 28-30; Doc. 32, p. 11). Plaintiff admits that he spent "less than a minute" on the ground, but claims that incident resulted in "bruises" and "knee prints" on his stomach and back. (Doc. 31-1, p. 14). It is not clear from Plaintiff's pleadings whether he seeks to base a claim of excessive force on these facts but, to the extent Plaintiff is seeking relief, the amount of force used in handcuffing Plaintiff was objectively reasonable, as explained above.

**(3) <u>Defendant Stewart</u>**

Although Defendant Stewart did not participate in either the "takedown" or the handcuffing of Plaintiff, Plaintiff has sued Defendant Stewart in a supervisory capacity. (Doc. 1, p. 14). Supervisors may be liable under § 1983 when they either "personally participate in [an] alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional violation." *Keating v. City of Miami*, 598 F.3d

753, 762 (11th Cir. 2010). Where the underlying constitutional violation is "not found," however, there can be no claim under a theory of supervisory liability. *See Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1308 (11th Cir. 2009) (citing *Hicks v. Moore*, 422 F.3d 1246, 1253 (11th Cir. 2005)). Because Plaintiff fails to establish a genuine issue with regard to his claim that Defendants Roland and Hoffman violated his constitutional rights, Plaintiff cannot sue Defendant Stewart in a supervisory capacity. Plaintiff has also failed to show that Defendant Stewart was personally involved in the decision to use force in Plaintiff's arrest. Accordingly, Plaintiff's excessive force claim against Defendant Stewart should be dismissed.

## C. UNLAWFUL DETENTION AND DENIAL OF MEDICAL CARE

Plaintiff last argues that he was unlawfully detained for six and one-half hours; during which time he needed and asked for, but was denied, medical care. (Doc. 1, pp. 12, 15). It is not entirely clear, though, why Plaintiff blames the named Defendants for these alleged wrongs. Plaintiff admits that the Defendants were not actively involved in his interrogation at the Morgan County Sheriff's Office, but he argues that Defendants Stewart and Hoffman "watch[ed] the mon[i]tor of the inter[ro]gation taking place next door," and "knew what was going on at all time[s]." (Doc. 32, pp. 4-5). These facts, alone, are insufficient to support a § 1983 claim against the named Defendants for any harm that occurred at the Morgan County Sheriff's Office. The appropriate scope of inquiry, then, concerns Plaintiff's arrest, the 10-15 minutes Plaintiff sat in a police car, and the subsequent the ride to the Morgan County Sheriff's Office. (Doc. 31-1, pp. 62-63).

Insofar as Plaintiff argues that the Defendants unlawfully detained him during the relevant periods, the Defendants are entitled to qualified immunity because they had at least "arguable probable cause." *See, e.g.*, *Whittington v. Town of Surfside*, 490 F.Supp.2d 1239, 1251

(S.D. Fla. 2007) ("so long as probable cause existed to arrest Plaintiff for any offense, the arrest and detention are valid") (citing *Lee v. Ferraro*, 284 F.3d 1188, 1196 (11th Cir. 2002)).

Insofar as Plaintiff argues that the Defendants denied him needed medical care, the Defendants are entitled to qualified immunity because they were not deliberately indifferent to a "serious medical need." (Doc. 27-3, pp. 11-13). Persons whose liberty has been restrained by arrest have a substantive due process right to medical care. *Carr v. Tatangelo*, 338 F.3d 1259, 1274 (11th Cir. 2003) (citing *City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 243-44 (1983)). In the Eleventh Circuit, courts apply the *Estelle v. Gamble* deliberate indifference standard to claims of improper medical care by arrestees. *Thomas v. Town of Davie*, 847 F.2d 771, 772-73 (11th Cir. 1988). "To prevail on a claim of deliberate indifference to serious medical need in violation of the Fourteenth Amendment, a plaintiff must show: (1) a serious medical need; (2) the defendant[s'] deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Youmans v. Gagnon*, 626 F.3d 557, 564 (11th Cir. 2010). "To prove 'deliberate indifference' to a serious medical need, a plaintiff must show: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Id.*

The record shows that Plaintiff did not have a "serious medical need" because he did not require immediate medical attention. *See Id.* (citing *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176 (11th Cir. 1994)). Although the "takedown" resulted in Plaintiff "landing on the upper area of his forehead and right shoulder and elbows" (Doc. 32, p. 11), Plaintiff was wearing a "DOT approved motorcycle helmet" at the time (Doc 21, p. 29) and, apart from a small knot on his head (Doc. 31-2, p. 7), Plaintiff visibly suffered only bruises and abrasions. (Doc. 31-1, pp. 48-53). *Cf. Youmans*, 626 F.3d at 561, (holding that a plaintiff who was "pulled from his truck by

11

his hair" and "kicked and punched [resulting in] visible abrasions on his head, face, shoulder, elbow, and hand" did not have a serious medical need). Plaintiff's largest visible wound was a silver-dollar sized abrasion on his right shoulder, which was matted together with sand and dirt from the driveway, along with blood and Plaintiff's shirt. *Cf. Id.* at 565 (noting, favorably, that "[n]othing in the record . . . show[ed] that Plaintiff's cuts bled while in Defendant's custody[and that Plaintiff] ultimately did not require stitches"). Accordingly, the Defendants are entitled to summary judgment.

## CONCLUSION

For the aforementioned reasons, is hereby **RECOMMENDED** that Defendants' Motion for Summary Judgment (Doc. 27) be **GRANTED**. Pursuant to 28 U.S.C. 636(b)(1), the parties may serve and file written objections to this Recommendation with the District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this 31st day of December, 2013.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge
